IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WILLIAM STUART ANAPOELL, M.D., on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS BUSINESS FINANCE CORPORATION and KEY EQUIPMENT FINANCE, INC.,<br><br>          Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:07-CV-198-TC |

After Plaintiff William Anapoell, M.D., filed his Second Amended Complaint in this contract dispute,[1] the Defendants filed their second round of motions to dismiss, which are now before the court. (Six months ago, the court dismissed Dr. Anapoell's First Amended Complaint but granted him the opportunity to cure pleading deficiencies in his contract claims.)

Dr. Anapoell leased medical equipment from Defendants American Express Business Finance Corporation (AEBF) and Key Equipment Finance, Inc. (Key). He alleges that Defendants breached the lease's express terms and implied covenant of good faith and fair dealing by violating the lease's insurance provision, which states, "Lessor may (but shall not be required to) obtain insurance at Lessee's expense." Specifically, he alleges that Defendants

---

[1]Dr. Anapoell brings this suit as a class action, but no motion to certify the proposed class has been filed with the court, so no class has been approved.

grossly overcharged him for the insurance and costs to obtain it, and charged him for items unrelated to such insurance.

Because the unambiguous insurance provision does not contain the limitation Dr. Anapoell reads into it, and because Dr. Anapoell did not cure the pleading deficiencies of his earlier complaint, the court holds that Dr. Anapoell has not stated a claim for which relief may be granted. Accordingly, under Rule 12(b)(6), Defendants' motions to dismiss all claims with prejudice are GRANTED.

## PROCEDURAL BACKGROUND

Last fall, the court dismissed the claims alleged in Dr. Anapoell's First Amended Complaint. (See Nov. 29, 2007 Order (Dkt # 44).) Most were dismissed with prejudice, but his claims for breach of contract and breach of the implied covenant were dismissed without prejudice. (Id. at 26.) The court ruled as follows:

> Given the silence of the Agreement regarding the amount the Defendants could charge, the court simply cannot find that Dr. Anapoell has stated a claim for breach of contract with the vague and conclusory allegations he provides. The court dismisses his claim, but without prejudice. To the extent he can validly allege a breach with more definiteness, then the court will consider granting leave to amend.
> . . .
>
> As was done for the breach of contract claim, the court dismisses the implied covenant claim without prejudice. Dr. Anapoell may file a motion for leave to amend his claim for breach of the implied covenant, but any new set of factual allegations must demonstrate breach of an implied promise that does not establish a new right under the written contract. His current allegations, which do not contain any detail concerning his claim, are simply too vague and conclusory to satisfy his pleading burden.

(Id. at 8, 10 (internal citation and footnote omitted).)

Dr. Anapoell did file a motion for leave to amend, which Defendants did not oppose.

Accordingly, the court granted the motion. (See Jan. 12, 2008 Order (Dkt # 51).) Dr. Anapoell then filed his Second Amended Complaint, and AEBF and Key each responded with a motion to dismiss, contending that Dr. Anapoell's Second Amended Complaint should be dismissed with prejudice because he does not state a claim for which relief may be granted.

## FACTUAL BACKGROUND[2]

On February 18, 2004, Plaintiff William Anapoell, M.D., entered into a lease for medical equipment with Defendant American Express Business Finance Corporation (AEBF). That lease transaction was documented by the Master Lease Agreement, the Equipment Schedule to the Master Lease Agreement, and the Purchase Order (collectively "Agreement"). (See Exs. A-C, attached to AEBF's Mem. Supp. Mot. Dismiss Second Am. Compl.)[3] On October 22, 2004, Defendant Key Equipment Finance, Inc. (Key) assumed AEBF's lease with Dr. Anapoell when it acquired the equipment leasing portfolio of AEBF.

The Agreement contains a provision requiring that the leased medical equipment be insured:

---

[2] The background facts are taken from Dr. Anapoell's Second Amended Complaint and are taken as true for purposes of this order only. See Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007) (on motion to dismiss, well-pleaded factual allegations in complaint are taken as true for purpose of analysis).

[3] Although Dr. Anapoell did not attach a copy of the lease documents to his Second Amended Complaint, where a written contract is referred to in a complaint and is central to a breach of contract claim, but is not submitted for judicial review, an indisputably authentic copy of the contract may be considered on a motion to dismiss. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Accordingly, the court considers the lease documents to be part of the Second Amended Complaint, and it need not convert the Defendants' motions to dismiss to motions for summary judgment. Id.

> **Insurance; Indemnification:**
>
> Lessee shall at all times maintain liability, fire, damage, casualty (covering death and personal injury) and theft insurance on the Equipment in amounts and with insurers acceptable to Lessor, and shall list Lessor and each Assignee as an additional and loss payee thereon. Such insurance policies shall require the insurer to provide Lessor with at least 30 days prior written notice of any material change in or cancellation of such insurance. <u>In the event that Lessor determines that any such insurance is not in effect, Lessor may (but shall not be required to) obtain such insurance at Lessee's expense.</u>

(Master Lease Agreement (attached as Ex. A to AEBF's Mem. Supp. Mot. Dismiss Second Am. Compl.) ¶ 8 (emphasis added) [hereinafter "Insurance Provision"].)

Although the Insurance Provision gave Dr. Anapoell the option to purchase insurance on his own, he did not do so. Consequently, AEBF obtained insurance for the equipment leased by Dr. Anapoell and sent Dr. Anapoell monthly invoices for the following charges: $157.35 for Property Insurance and $90.48 for Liability Insurance, for a total of $247.83 per month. (After Key acquired the lease from AEBF, Key sent the same monthly invoices to Dr. Anapoell.)

Dr. Anapoell interprets the Insurance Provision to require that Defendants charge no more than their actual cost of insurance plus reasonable expenses actually incurred to obtain the insurance mandated by the Agreement. According to Dr. Anapoell, the monthly charge "greatly exceeds" the limited amount that can be charged under the Agreement. (Second Am. Compl. ¶ 16.)

Dr. Anapoell paid the monthly invoices for a time, "not knowing they were grossly excessive." (Id. ¶ 25.) According to Dr. Anapoell,

> Defendants' monthly insurance charge includes amounts over the true insurance premium plus reasonable expenses to obtain that insurance in that the monthly insurance charge includes a "billing and collecting" fee (with no corresponding cost to Defendants) and/or undisclosed interest at grossly excessive rates for

4

> Defendants' "financing" of the premium (with rates well over the cost of any actual funds advanced); and/or in that the monthly charge includes amounts over the true insurance premium and reasonable expenses to obtain that insurance because Defendants (or their alter ego affiliates) receive payments from insurance agents or insurance companies under the guise of reinsurance cessations, service fees, commissions or rebates with no corresponding costs or risk.

(Id. ¶¶ 16, 24.)  Dr. Anapoell alleges, in the alternative, that the "Defendants breached the Agreement by failing to ascertain their expense for obtaining insurance by charging Plaintiff and class members some random amount."  (Id. ¶ 34.)  Finally, he says:

> The charges assessed for insurance are <u>so disproportionate with the true expense of obtaining insurance</u> that the purpose of the charge could not have been related to insurance as mandated by the contract's terms, but instead is a <u>disguised profit center allowing Defendants to secretly charge more for leasing the equipment</u> to Plaintiffs than Plaintiffs agreed to pay.

(Id. ¶ 39 (emphasis added); see also id. ¶ 33 (same).)  Stated another way, Defendants "charg[ed] secret fees, fail[ed] to openly and honestly disclose the true source of the charges imposed upon Plaintiffs, and collect[ed] a profit from this activity."  (Id. ¶ 40.)

Based on the above, Dr. Anapoell asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## ANALYSIS

**Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  Conclusory allegations are allegations that "do not allege the factual basis" for the claim.  Brown

5

v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).  See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based") (emphasis added).  The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  And although all reasonable inferences must be drawn in the non-moving party's favor,  Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1969, quoted in Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

**Claim for Breach of Contract**

<u>Interpretation of the Insurance Agreement</u>

Under Utah law,[4] interpretation of the terms of the Agreement is a question of law for the court to decide.  Green River Canal Co. v. Thayn, 84 P.3d 1134, 1140 (Utah 2003).  In contractual dispute cases, a court first looks to the contract's four corners to determine the parties' intentions.  Bakowski v. Mountain States Steel, Inc., 52 P.3d 1179, 1184 (Utah 2002).

> If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law.

Id.

---

[4]This court applies Utah law to the contract claims based on the choice of law provision in the Agreement.  (See Master Lease Agreement ¶ 16 ("EACH LEASE SHALL BE GOVERNED BY THE LAWS OF UTAH, WITHOUT REGARD TO ITS PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.") (emphasis in original).)

Here, the Agreement provides, in relevant part, that, "[i]n the event that Lessor determines that any such insurance is not in effect, Lessor may (but shall not be required to) <u>obtain such insurance at Lessee's expense</u>." (Agreement ¶ 8 (emphasis added).)  The court finds that the language of the Insurance Provision is unambiguous.  The provision allows the Defendants, without limitation or qualification, to obtain insurance upon Plaintiff's failure to do so and to charge Plaintiff for the expense of obtaining the insurance.

Dr. Anapoell contends that the Insurance Provision "limits the Defendants to charging no more than" their actual expense.  (Second Am. Compl. ¶ 32.)  Essentially, Dr. Anapoell interprets "Lessee's Expense" to mean "Lessor's Actual Cost And No More."  But Dr. Anapoell cannot and does not point to any express term in the Agreement to support his interpretation.

The Insurance Provision's express language does not limit or proscribe the imposition of any billing fees, collection fees, commissions or other charges related to procuring the insurance at issue.  Indeed, the parties agree that the plain language of the Agreement allows the Defendants to charge for costs that have a nexus to the insurance coverage.

Dr. Anapoell is reading language into the Agreement that does not exist, and he does not allege any course of dealing between the parties or usage of trade that would suggest the limitation he now advocates.  The court need not, and does not, accept Dr. Anapoell's interpretation of the Agreement because it is contradicted by the express terms of the Agreement.

<u>Unrelated Costs or Expenses</u>

Paragraph 16 of the Second Amended Complaint, on which Dr. Anapoell heavily relies to show improper charges, lists two types of items that, on their face, are related to obtaining insurance: (1) billing and collection fees; and (2) interest charged on the money "advanced" by

the Defendants to pay the lessee's premium to the insurance company.

> Dr. Anapoell then alleges that
>
> the monthly charge includes amounts over the true insurance premium and reasonable expenses to obtain that insurance because Defendants (or their alter ego affiliates [not identified in the Complaint]) <u>receive</u> payments from insurance agents or insurance companies under the guise of reinsurance cessations, service fees, commissions or rebates with no corresponding costs or risk.

(Second Am. Compl. ¶ 16 (emphasis added).)  Apparently he claims that Defendants received discounts or reimbursement from insurance companies and agents, which reduced (or perhaps eliminated) the actual premium cost, and that such savings should have been passed on to Dr. Anapoell under the terms of the Agreement.  This allegation does not refer to a charge unrelated to the cost of obtaining insurance.  It simply relates to his theory that "Lessee's expense" means Defendants' actual cost.

The only allegation that comes close to alleging a charge unrelated to the cost of obtaining insurance is in Paragraph 33.  There, Dr. Anapoell alleges that:

> Defendants breached the leases by charging an amount far in excess of and <u>unrelated to their expense of obtaining insurance</u>, damaging Plaintiff and class members.  In reality the insurance charge is simply a <u>disguised profit center designed to collect additional monies</u> from Plaintiffs that they have not agreed to pay.  When Plaintiffs contracted with Defendants they agreed to pay for a monthly lease charge in a set amount.  They also agreed to pay for the expense of obtaining liability and property insurance coverage as mandated by the contract and therefore, by assessing the charge for a purpose not agreed to, Defendants are in breach.

(Second Am. Compl. ¶ 33 (emphasis added).)  His claim that charges were "far in excess of and unrelated to [Defendants] expense of obtaining insurance" is conclusory.  So is his characterization of the charges as a "disguised profit center."  His complaint does not contain any details about charges not related to the costs of obtaining insurance.  He provides no reference

point for comparing what was charged versus what one could reasonably expect based on, for example, market rates, industry standards, or course of dealing. He does not define "grossly excessive" or indicate what he believes to be the amount of the "true" insurance premium and reasonable expenses.

Consequently, the only allegation concerning unrelated costs is insufficient to satisfy his pleading burden.

### Failure to Ascertain Costs

Finally, Dr. Anapoell contends, in the alternative, that "Defendants breached the Agreement by failing to ascertain their expense for obtaining insurance" (id. ¶ 34), and pass on no more than the actual expense (see id. ¶¶ 16, 32). This conclusory assertion has no other allegations to support it. And the Agreement's terms do not set forth any duty on the part of the Defendants to ascertain the expense to Plaintiff's benefit.

### Conclusion

In short, Dr. Anapoell alleges breach of a promise that was never made and fails to meet his pleading burden concerning a promise that was made. For these reasons, his claim for breach of contract is dismissed with prejudice for failure to state a claim for relief that may be granted.[5]

## Claim for Breach of Implied Covenant of Good Faith and Fair Dealing

Dr. Anapoell also asserts a cause of action for breach of the implied covenant of good faith and fair dealing. In his Second Amended Complaint, he alleges that

> Defendants have breached the implied covenant of good faith and fair dealing of the Agreement by charging secret fees, failing to openly and honestly disclose the

---

[5] The court also finds that allowing further amendments would be futile.

>  true source of the charges imposed upon Plaintiffs, and collecting a profit from
>  this activity.  Defendants have thereby deprived and/or injured Plaintiffs' ability to
>  obtain the fruits and benefits of the Agreement.

(Second Am. Compl. ¶ 40.)

Utah recognizes the existence of the implied covenant in all contracts:

> Under this covenant, the contracting parties each impliedly promise not to
> intentionally or purposely do anything that will destroy or injure the other party's
> right to receive the fruits of the contract . . . .  [T]o comply with the covenant, a
> party must act consistently with the agreed common purpose and the justified
> expectations of the other party.

Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 553 (Utah 2002) (internal citations and quotation marks omitted).  But the covenant is not without limitation.

> First, this covenant cannot be read to establish new, independent rights or duties
> to which the parties did not agree.  Second, this covenant cannot create rights and
> duties inconsistent with express contractual terms.  Third, this covenant cannot
> compel a party to exercise a contractual right "to its own detriment for the purpose
> of benefitting another party to the contract."  Finally, [courts] will not use this
> covenant to achieve an outcome in harmony with the court's sense of justice but
> inconsistent with the express terms of the applicable contract.

Markham v. Bradley, 173 P.3d 865, 871-72 (Utah Ct. App. 2007) (citations omitted).  In other words, the implied covenant may not be interpreted to make a better deal for the party than he made for himself.  Malibu Inv. Co. v. Sparks, 996 P.2d 1043, 1048 (Utah 2000).

When determining whether a party has breached the implied covenant of good faith and fair dealing, the court looks to the express contractual provisions as well as the course of dealings between the parties.  Brown v. Moore, 973 P.2d 950, 954 (Utah 1998).  Here, Dr. Anapoell relies on the breach of contract allegations to support his claim for breach of the implied covenant.  (And those allegations do not contain any information regarding course of dealing between the parties.)

He contends that the Defendants breached the covenant by charging grossly excessive fees. Not only is this conclusory, but it attempts to establish new, independent rights or duties not agreed upon by the parties – namely, an unwritten requirement that the Defendants may only "pass on" their actual insurance-related expenses to Dr. Anapoell.

Dr. Anapoell improperly seeks to rewrite the Insurance Provision and prevent the Defendants from exercising their right under the Agreement to charge fees and associated expenses incurred in obtaining the insurance that Plaintiff elected not to procure. See Rio Algom Corp. v. JIMCO Ltd., 618 P.2d 497, 505 (Utah 1980) ("A duty of good faith does not mean that a party vested with a clear right is obligated to exercise that right to its own detriment for the purpose of benefitting another party to the contract. A court will not enforce asserted rights that are not supported by the contract itself.").

Dr. Anapoell then contends, in the alternative, that the Plaintiffs had, but failed to satisfy, an obligation to "ascertain their expense for obtaining insurance" and then charged Dr. Anapoell a "random amount." (Second Am. Compl. ¶ 34.) Dr. Anapoell's allegation in Paragraph 34 of the complaint is so conclusory that it does not satisfy the standard that a claim must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).

Finally, Dr. Anapoell contends that Defendants violated the covenant because they abused their discretionary power under the Insurance Provision. He notes that "[w]hen one of the parties retains the unilateral power or discretion to define and effectuate certain terms in the contract, it must exercise such power or discretion in a good faith and reasonable manner." (Pl.'s Mem. Opp'n (Dkt # 57) at 9 (citations omitted).) But the court is not convinced that the Insurance

Provision grants Defendants "unilateral power or discretion" in this situation, because Dr. Anapoell had a remedy – he could have obtained his own insurance, as the Agreement allowed. But he did not do that. "[T]he degree to which a party to a contract may invoke the protections of the covenant turns on the extent to which the contracting parties have defined their expectations and imposed limitations on the exercise of discretion through express contract terms." Markham v. Bradley, 173 P.3d 865, 872 (Utah Ct. App. 2007) (quotation marks and citations omitted). This case, as pled, does not fit into the situation where a party to the contract has no control over the situation. Instead, the express terms of the Insurance Provision (Dr. Anapoell's right and obligation to obtain insurance on his own) imposed a limitation on Defendants' exercise of discretion.

In short, Dr. Anapoell's expectations are not justified. Taking the well-pleaded non-conclusory allegations as true, Dr. Anapoell's right to receive the fruits of the contract was not destroyed by the Defendants. And that is what must be shown to survive the Defendants' motions to dismiss.

For these reasons, the court finds that Dr. Anapoell has failed to state a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, his claim for breach of the implied covenant is dismissed with prejudice.[6]

## ORDER

For the foregoing reasons, the court GRANTS Key Equipment Finance Inc.'s Motion to Dismiss Plaintiff's Section Amended Class Action Complaint (Dkt # 47), and American Express

---

[6] Given the number of chances he has had to satisfactorily plead his claims, granting further leave to amend would be futile.

Business Finance Corporation's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt # 55).

    DATED this 28th day of May, 2008.

                                      BY THE COURT:

                                      *Tena Campbell*

                                      TENA CAMPBELL
                                      Chief Judge